**UNITED STATES of America, Petitioner,**

v.

**Jack Richard COPE, Respondent.**

**Cr. Nos. 2240, 19209, 19216, 19225.**

United States District Court
W. D. Missouri, W. D.

Oct. 8, 1956.

No appearance for petitioner.

Edward L. Scheufler, U. S. Atty., Kenneth C. West, Asst. U. S. Atty., Kansas City, Mo., for respondent.

R. JASPER SMITH, District Judge.

Defendant-petitioner presents a motion to vacate sentence and judgment under Section 2255, Title 28 U.S.C.A. In support of his motion, petitioner urges nine contentions. In the beginning it should be observed that the sentence and judgment complained of was pronounced by my predecessor in office, and that I had no opportunity to observe this defendant in Court.

■■ In the first of these "contentions" petitioner states that "his plea was based on a forced admission by means of a fraud, promises, and threats, all of which resulted in a coerced and involuntary plea of guilty on the part of the petitioner." The motion evidently was prepared and drafted by petitioner without the aid of counsel, and is rather indefinite, uncertain and ambiguous in its allegations. Nevertheless, I shall attempt to interpret it consonant with what I believe to be the intention of petitioner. The statement that petitioner's plea of guilty was coerced and involuntary, and induced by a forced confession extracted by fraud and intimidation is a mere conclusion. Petitioner fails to allege the facts and details surrounding the forced confession, such as the date and place of its occurrence, the persons involved, the fraud, threats and promises directed to petitioner, and the reasons why petitioner felt coerced and induced to enter an involuntary plea of guilty. A motion to vacate a sentence by a federal court filed pursuant to Section 2255, Title 28 U.S.C.A., must set forth facts as distinguished from mere conclusions upon which right to relief is predicated; and in the absence of such facts in the motion, the Court properly may deny the motion without hearing. United States v. Sturm, 7 Cir., 180 F.2d 413. As to the sufficiency of allegations to support an order, under Section 2255, granting a hearing thereon, the recent case of Taylor v. United States, 8 Cir., 1956, 229 F.2d 826, 832, stated:

"Because the statutory proceeding is a collateral attack upon the judgment of conviction, the burden is on the petitioner to establish a basis for relief under some one or more of the grounds set forth in [section 2255]. At the threshold of his undertaking is the necessity of alleging facts which, if proven, would entitle him to relief. *Such allegations must particularize definitely and be beyond mere conclusions.* [Cases cited.]"

Since the first allegation does not particularize definitely, it warrants no consideration in a determination of whether or not a hearing must be granted under Section 2255.

Petitioner's second allegation declares that "there is absent from transcript of record a showing of an understanding admission of the offense on his part, all of which prejudiced petitioner's rights and resulted in a denial of due process of law, under the Constitution of the United States." The record on its face contradicts petitioner's allegation, and shows that, during the proceedings against the petitioner, he and his attorney were afforded numerous opportunities to be heard, were cognizant of the nature of the proceedings in every respect, and in no way indicated that they failed to appreciate the charge and the significance of petitioner's plea.

The transcript of the record made at the time of the arraignment of petitioner on the charge against him reveals the following:

"Mr. West: These gentlemen, Your Honor, are both under indictment. The indictment was returned by a Federal Grand Jury on March 5, 1955, in connection with the armed robbery of the Cornerstone Bank at Southwest City, Missouri.

"These two defendants are both involved in Count 1 and Count 5 of that indictment. Count 1 generally charges that these two defendants together with one William Bud Lapatter entered the bank and with weapons took $50,838 from the people in this bank. Count 5 generally charges that these two defendants together with three other persons participated in and were a part of a conspiracy to affect this identical bank robbery, so Count 1 is the actual robbery. Count 5 is a conspiracy count in connection with it.

"These defendants are not involved in the other three counts in this indictment with reference to other persons.

"Both of these defendants and their counsel have been furnished previously with copies of this indictment and I wonder if you would waive formal reading of the indictment?

"Mr. Graves (Attorney for Jack Cope): Mr. Cope will waive.

\* \* \* \* \* \*

"The Court: Let me ask the question, do you affirmatively and positively now waive reading of the indictment?

"I first ask defendant Cope and his counsel, Mr. Phil Graves, do you waive reading of the indictment?

"Mr. Graves: Yes, Your Honor.

\* \* \* \* \* \*

"Mr. West: Mr. Cope, as to Count 1 of the indictment, what is your plea, sir?

"Defendant Cope: Guilty.

"Mr. West: What as to Count 5?

"Defendant Cope: Guilty.

"The Court: So I will understand, does the Defendant Cope, who appears here in person by counsel, Mr. Phil Graves of Neosho, Missouri, enter a plea of guilty to both Counts 1 and 5 of the indictment?

"Defendant Cope: That is correct.

"Mr. Graves: Yes, sir.

"The Court: Very well, let us get it in the record. Defendant Cope in person and by counsel, Mr. Phil Graves of Neosho, Missouri, enters a plea of guilty to both Counts 1 and 5 of the indictment. Is that correct, gentlemen?

"Mr. Graves: Correct, Your Honor."

These arraignment proceedings occurred on April 1, 1955; and on June 17, 1955, petitioner was brought before the Court for imposition of sentence. The record on that date discloses the following:

"The Court: Very well. Now does the defendant, Jack Richard Cope, have anything to say either in person or by counsel, before sentence is imposed?

"Mr. Graves: Your Honor, I represent Jack Cope.

"The Court: This is Mr. Phil Graves speaking?

"Mr. Graves: I now have not seen your report. I will say this to the Court, that when Jack Cope employed me he told me about these other robberies. The Government had no information about them at all, about his involvement in them. I recommended to him, and he accepted my recommendation that he tell the Government everything he had been involved in and clean up the slate.

"Jack Cope when he was arrested was living down in Arkansas, down around Harrison, Arkansas. He is one of these fellows whose character is probably contradictory. Had he lived four or five hundred years ago, he would probably have been in Sherwood Forest. That is no excuse. But upon my advice and upon Jack Cope's expressed desire that he wanted to clean up his whole slate, he gave the Government additional information. I think Mr. West will bear me out, those other counts and other charges were filed merely because he was * * *

"Mr. West: There were some other things, but I will say that he was cooperative. There was other information but he was completely cooperative.

"The Court: Does that conclude what you have to say, Mr. Graves?

"Mr. Graves: That concludes what I have to say.

"The Court: Now, does the defendant Cope have anything which he would like to say in his own behalf before sentence is imposed?

"Defendant Cope: No, sir."

These proceedings clearly illustrate that the petitioner was fully aware of the gravity of the offense charged and the significance of his plea. Mr. West, the Assistant United States Attorney, adequately explained the nature of the charge at the time of the arraignment.

Petitioner was asked twice, once by Mr. West and once by the Court, what his plea would be, and twice petitioner responded with a guilty plea. I must conclude, without further elaboration by petitioner, that his second allegation cannot support an order for a hearing under Section 2255.

The premise of petitioner's third allegation is that, on June 17, 1955, the date of imposition of sentence on petitioner, he was insane, and that the Court had knowledge of petitioner's insanity at the time sentence was imposed. As alleged by petitioner, "the Court had knowledge of and knew of the defendant's insanity at the time said sentence was imposed, and that, petitioner was placed under the custody of Mrs. Jack Cope, Sr., upon being released from a Hospital for the insane." For this reason petitioner contends that his "sentence and conviction is illegal and in violation of his constitutional rights"; and that "the Court denied (him) the right to a fair trial." The remainder of the motion contains various citations and legal conclusions relative to the inability of an insane person to be of assistance to his counsel; the incapacity of a demented person to legally waive counsel, or to make a proper defense; and the ineffectuality of waiver if it goes so far as to deny due process of law.

These last allegations are treated as raising in toto the question of petitioner's sanity at the time sentence was passed. The allegation that the Court knew of petitioner's insanity at the time the plea was accepted and sentence imposed means no more than that the Court should have concluded from the facts surrounding the case that defendant was insane. Certainly, no expression from either petitioner or his attorney raised any question of insanity. Both on the occasion of the arraignment and at the time sentence was passed, petitioner was represented by Mr. Phil Graves of Neosho, Missouri, a competent attorney of petitioner's own choice, and personally retained by him. The transcript, quoted

803

above, reveals that Mr. Graves, present at the time of sentence, was afforded an opportunity to make a statement on petitioner's behalf. In addition, after his plea of guilty, but before sentence was imposed on petitioner, he was interviewed by the Probation Office for the Western District of Missouri, relative to a presentence report which, incidentally, was in the hands of the Court at time of sentence. At no time, when petitioner was so interviewed, or when before the Court in person and by attorney, did he make any claim, assertion or suggestion that he was insane, either at the time of commission of the crimes charged, or at the time of his arraignment or of imposition of sentence. As the transcript discloses, petitioner was afforded an opportunity to make *any* statement to the Court before sentence was passed. We must assume that he then knew the facts that he now attempts to assert in this motion. Why did he not reveal them?

 During the proceedings involving this petitioner, the Court reached the conclusion that the petitioner was sane. The petitioner's plea of guilty was an implied admission of sanity. United States ex rel. Herge v. Commonwealth of Pennsylvania, D.C., 89 F.Supp. 636; and the Court's action in accepting the plea was necessarily an affirmation of its belief in his sanity. It makes no difference for the purposes of this motion whether or not the Court knew that petitioner was insane at the time he pleaded guilty; because if in fact petitioner was insane, the judgment of conviction is void. The crucial question is the fact of insanity, and the Court's knowledge or lack of knowledge of the fact is immaterial.

The only facts alleged by petitioner in support and elaboration of his allegation of insanity are found in an affidavit supporting a motion for an order to issue subpoena to Mrs. Jack Cope, Sr., apparently petitioner's mother. The Court will treat these facts as though they had been properly pleaded in the body of the original motion for vacation of sentence.

The facts which petitioner asserts in support of his allegation of insanity are that "on or about the 6th day of November, 1947, the petitioner was released from an institution and committed to her custody (Mrs. Jack Cope, Sr.) and that such institution was for the insane; and that (Mrs. Cope) was told by the authorities in this Hospital that she could have the petitioner returned at any time by relinquishing her custody."

██ None of the records or files of this case indicate that petitioner was ever at any time adjudged insane or that he was in fact insane on any of the occasions he appeared in Court. The entire basis of petitioner's allegation rests upon the incident assertedly occurring in November, 1947. The files in petitioner's case contain a pre-sentence report, which the Court ordered before imposing sentence. It appears from information in this report furnished by the Probation Officer for the Northern District of Illinois that during 1947 petitioner and his first wife had serious domestic difficulty, climaxed on one occasion when petitioner returned home intoxicated and began attacking his wife. The wife fled the house, and upon arrival of police, petitioner had nearly asphyxiated himself by turning on the gas range. Because of this behavior, petitioner was taken to the Cook County Psychopathic Hospital and subsequently to Elgin State Hospital at Elgin, Illinois. After observation for two months, petitioner was absolutely discharged on November 6, 1947, as being *"without psychosis."* The Court is of the opinion that this experience of petitioner cannot by any construction substantiate an allegation of insanity in and of itself.

The motion is wholly lacking in merit when compared with the files and records of the sentencing Court; " * * * the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief". Section 2255, Title 28 U.S.C.A. Petitioner's Motion to Vacate Sentence is overruled. It Is So Ordered.