James P. **TAYLOR**, Appellant,

v.

**UNITED STATES** of America, Appellee.

James Peter **TAYLOR**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Nos. 16350, 16351.

United States Court of Appeals Eighth Circuit.

July 29, 1960.

John Quinn, St. Louis, Mo., made argument for the appellant.

Fallon Kelly, U. S. Atty., St. Paul, Minn., made argument for the appellee.

Before GARDNER, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

These appeals are from the denial by the United States District Court for the District of Minnesota of appellant's motions brought under 28 U.S.C.A. § 2255 to vacate and set aside sentences imposed upon him in 1956 following his pleas of guilty to charges of murdering the cashier of the Northern State Bank of Thief River Falls, Minnesota, and transporting in interstate commerce counterfeited and stolen travelers checks. Appellant was sentenced to two terms of ten years and to life imprisonment sentences to run consecutively. His initial motion alleged that he was insane at all times he appeared before the District Court as well as at the time of the crimes alleged. Additionally, he charged that his court-appointed counsel was incompetent and acted in collusion with the United States Attorney. Accompanying appellant's motion were five exhibits detailing his medical and personal history. Judge Nordbye, before whom all proceedings were held, denied without a hearing the initial motion to vacate on the ground that it was "wholly without merit and substance" so that under the statute "the files and records of the case conclusively show that the prisoner is entitled to no relief". 28 U.S.C.A. § 2255.

Specifically, as to the claim of insanity, the court relied upon its observation of appellant's demeanor during the times he appeared before it, upon a detailed statement made by him to agents of the Federal Bureau of Investigation following his pleas of guilty, upon the fact that at no prior time during the disposition of the case did he contend that he was insane or incompetent, and upon a supplemental report filed at the request of the court by psychiatrists who examined him at the time of his trial, which report concluded that he was "mentally competent to be able to understand the proceedings against him and properly to assist in his own defense".

As to appellant's assertion that he was denied the assistance of competent counsel and that his counsel acted in collusion with the United States Attorney, the court noted that appellant himself had thanked the court "for appointing me two such conscientious and capable attorneys who have truly demonstrated the American way in spirit as well as in fact", and explained further that:

"In all my years on the Bench, I have never had a court-appointed attorney who gave more of his time and personal funds to defend an indigent defendant than Mr. Nemerov, and now how ironical it is that he should be charged by Taylor with the fantastic claim of collusion and fraud when counsel gave to this defendant honest, devoted and competent legal services without stint. * * * Such charges of fraud and collusion are as baseless as the charges Taylor makes against the United States Attorney."

Subsequent to the court's denial of his initial petition appellant moved for a default judgment thereon upon the ground that the United States had failed to make any answer to the orginal motion and that therefore all its statements and contentions must be deemed to have been correct. This subsequent motion was de-

nied by the District Court. From both these decisions appellant appeals.

Turning first to the question of whether or not the court erred in denying appellant a hearing on his allegation that he had been denied the effective assistance of counsel, a review of the record indicates conclusively a lack of substance to this charge. Appellant first appeared in court on December 16, 1955, at which time he requested that the court appoint as his counsel one of three named lawyers. Irving Nemerov, one of the three so named, was subsequently appointed. On February 6, 1956, Mr. Nemerov moved that the court appoint counsel to assist him, pursuant to which motion Walter E. Riordan was named. Appellant's counsel thereafter made and argued sixteen different motions on his behalf, which motions included requests to dismiss all counts of the indictment, to continue the trial, to change its venue, and to order the production of certain documents and lists. Additionally, a supplementary motion for continuance was made, argued and granted. Following the appellant's pleas of guilty to the charged offenses, counsel requested that the court have him examined by three psychiatrists to determine whether or not he was then suffering from any brain injuries. Counsel also presented to the court by way of mitigation a detailed and comprehensive review of appellant's entire personal and medical history. Finally, appellant's counsel Nemerov delivered to the court an eloquent and persuasive argument against the imposition of capital punishment.

We have examined in detail the tremendous record in this case. In summary, it reveals that appellant was at all times the beneficiary of outstanding, conscientious and dedicated legal assistance. We know of no instance where the rights of an accused received greater care or consideration. We know of no instance where appointed counsel, working without pay and expending their own funds, or, for that matter, of counsel working for pay, exceeded the thought, the care, the caution as well as the ability exhibited herein. Solid months of time and substantial personal funds went into the defense of this man's life and his right to be dealt with fairly when facing a criminal charge carrying a possible death penalty.

In support of this conclusion, the record indicates that the trial court stated on April 6, 1956, at which time appellant changed his pleas of not guilty to ones of guilty, that:

"* * * I want to express my deepest appreciation to Mr. Nemerov and Mr. Riordan for the very efficient, faithful, and loyal service they have rendered at the request of the Court, which has continued now for many months."

The court again expressed its appreciation to counsel on July 5, 1956, on which day it sentenced appellant, when it declared that it:

"* * * wishes to express his sincere appreciation to Messrs. Nemerov and Riordan for the efficient and faithful legal services which, without compensation, they have rendered to this defendant under appointment of this Court."

The defendant himself stated in court that day that:

"I, too, would like to thank His Honor and this Court for appointing me two such conscientious and capable attorneys who have truly demonstrated the American way in spirit as well as in fact. These men have done everything in their power to protect my rights and at the same time to see justice done."

Appellant's counsel Nemerov explained, in regard to his defense of appellant, that:

"I knew that I had to become his friend. It took time to become his friend. I felt it was my duty, Your Honor, to check out anything he might tell me, and I did to the best of my ability, and all alone. * * * I checked out everything I could find, and Taylor and I became friends and

Taylor and I started to chart our course together long ago."

Lastly, Mr. Nemerov stated, following the sentencing of appellant:

"This defendant was given every advantage of his right to counsel. In not one instance was he treated differently than he would have been if he had had unlimited funds."

The Sixth Amendment does not require for its satisfaction that the actions of counsel result in a favorable outcome. Rather, its requirement is met whenever the accused is supplied counsel who exercises that judgment which might be expected of one trained in the law and committed to the diligent application of its principles. Mitchell v. United States, D.C.App.1958, 104 U.S.App.D.C. 57, 259 F.2d 787, certiorari denied 1958, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86. Under this standard of reasonableness, numerous decisions have affirmed the denial of a hearing upon § 2255 claims of ineffective counsel. Mitchell v. United States, supra; United States v. Trumblay, 7 Cir., 1958, 256 F.2d 615, certiorari denied 1959, 358 U.S. 947, 79 S.Ct. 355, 3 L.Ed. 2d 353; Dario Sanchez v. United States, 1 Cir., 1958, 256 F.2d 73; Adams v. United States, D.C.App.1955, 95 U.S.App. D.C. 354, 222 F.2d 45; Pelley v. United States, 7 Cir., 1954, 214 F.2d 597, certiorari denied 1955, 348 U.S. 915, 75 S. Ct. 296, 99 L.Ed. 718. In both Pelley and Trumblay the appellate courts noted, among other factors, that the movant chose his own counsel. In Dario Sanchez and Adams the opinions emphasized that the trial courts had pointedly thanked the movants' counsel for their diligent efforts. Moreover, in the former decision the court explained that:

"Certainly the judge who presided at the trial, and thus was perfectly well aware of the services rendered by court-appointed counsel, had no obligation to call a hearing on the defendant's § 2255 motion, in order to waste time while the defendant undertook to make specific his vague general allegations of counsel's inadequacy." Dario Sanchez v. United States, supra, 256 F.2d at page 75.

We, therefore, conclude that the trial court correctly ruled that, insofar as the appellant claimed the ineffective assistance of counsel, a hearing was not required because "the files and records of the case conclusively show that the prisoner is entitled to no relief". 28 U.S.C.A. § 2255.

Appellant's motion to vacate also alleged that his counsel, Mr. Nemerov, acted in collusion with the United States Attorney. No facts are asserted in support of this conclusion. The only conceivable basis for it is the statement made by Mr. Nemerov at the hearing to determine whether or not a jury should be empaneled to determine appellant's punishment to the effect that he did not agree with the decision in Durham v. United States, D.C.App.1954, 94 U.S.App. D.C. 228, 214 F.2d 862, 875, 45 A.L.R.2d 1430, in which the Court of Appeals for the District of Columbia held that a criminal was not responsible for his crime if his unlawful act "was the product of mental disease or mental defect". Counsel, however, further explained that his reason for not urging the adoption of the liberal Durham rule was that appellant did not contend that he was insane at the time of the crime but rather that his mental condition then and during trial should be viewed as a mitigating circumstance in the determination of his punishment. Moreover, an examination of the entire record reveals that all the proceedings involving appellant were adversary in nature. Typical evidence of this fact appears in a statement made by Mr. Nemerov to the effect that:

"I felt it was my duty, Your Honor, to check out anything he might tell me, and I did to the best of my ability, and all alone. I pleaded with the United States Attorney for help at times and got nothing but a sarcastic answer, if not an answer of cold silence; but I checked out everything I could find, * * *."

In conclusion, there is nothing in the record which controverts the finding of the District Court that:

"Such charges of fraud and collusion are as baseless as the charges

Taylor makes against the United States Attorney."

■ Considering next the allegation of appellant's motion that he was insane at the time of the crime, we hold that the trial court again correctly determined that he was not entitled to a hearing thereon. The rule governing this situation is well stated in Bishop v. United States, D.C.App.1955, 96 U.S.App.D.C. 117, 223 F.2d 582, 584, reversed on other grounds 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835, wherein the court explained:

"The issue of insanity as a defense is presentable upon the trial and appealable if error has been made in respect to it, and a motion to vacate under Section 2255 cannot be used as a substitute for an appeal. Therefore an alleged insanity at the time of the commission of a crime cannot be used as a basis for a motion under Section 2255."

See, also, Hallowell v. Hunter, 10 Cir., 1951, 186 F.2d 873, and Hahn v. United States, 10 Cir., 1949, 178 F.2d 11.

■ Turning finally to the major import of appellant's motion—that is, his alleged incompetency at all times during the proceedings against him in the District Court—he asserted that his mother had been committed to a mental institution as a psychopath, that he had suffered a series of severe cerebral concussions which necessitated his hospitalization and which resulted in his progressively more asocial conduct, and that he was discharged from the Navy because of a mental defect. Additionally, appellant alleged that since being sentenced he has been confined on account of his mental illness at the Medical Center for Federal Prisoners at Springfield, Missouri, and that during the Sixth Seminar in Forensic Psychiatry, conducted at the Center in 1957 and sponsored by the Menninger Foundation, he was described as being mentally ill.

Attached to appellant's motion were five exhibits. Exhibit 1 contained excerpts from his military medical history records. His discharge examination de-

tailed a head injury he received approximately three months prior to enlistment and stated that as a consequence he suffered from headaches, dizziness and sleeplessness. Under the category of "mental status", the record explained that:

"He has some confusion of thought processes at times, has becoming increasingly irritable for several months, and has definite memory defects * * * At staff conference this date (7/22/43) it was the concensus of opinion that this patient is suffering from the effects of the concussion which he received in 1941 and which was aggravated by a similar injury in 1943."

Exhibit 2 was excerpts from the proceedings of the Sixth Seminar in Forensic Psychiatry, which conference described appellant as "quite ill", in an "agitated state of depression", suffering "manifested paranoid delusions", showing "psychotic decompensation with chaotic and uncontrolled emotional expression and questionable depersonalization", and manifesting "schizophrenic reaction, chronic". Exhibit 3 detailed the first two annual reviews of appellant's mental condition at the Springfield Hospital, which described him as suffering from:

"Schizophrenic reaction, chronic undifferentiated type, manifested by autistic thought, paranoid trends, flatness of affect, defective interpersonal relations, uncontrolled antisocial and homicidal traits."

Exhibit 4 contained excerpts from the F.B.I.'s pre-sentence investigation of appellant. It established that he had suffered head injuries in 1941, 1942, 1943, and 1948, that he had at several times expressed a desire to receive psychiatric help and had at one time consulted such a physician, and that his conduct generally over a period of years had been erratic and his personality and general health that of a disturbed, mentally unwell person. Exhibit 5 referred to records of the Veterans Administration in regard to appellant's treatment at various Veterans Hospitals for head injuries. In

connection with such treatment, he was in 1949 referred to a psychiatrist and did that same year require physical restraint in order to prevent injury to himself.

Mindful as we are of the fact that the District Court observed the appellant's demeanor on eight separate occasions and that it examined the detailed statement made by him to agents of the F.B.I., we, nonetheless, conclude that appellant's initial motion to vacate and the exhibits accompanying it raise a question of fact as to his competency which is not conclusively resolved by the files and records so as to make a hearing thereon unnecessary. This conclusion we believe is amply supported by relevant authority.

■ In Smith v. United States, 9 Cir., 1959, 267 F.2d 210, the defendant's motion to vacate on the ground that he was incompetent at trial was denied without a hearing. The allegations of the motion were that he had received a medical discharge from military service on account of mental defects, had previously been a patient of a Veterans Administration psychiatrist, and after conviction had been confined as a mental patient at the federal hospital in Springfield, Missouri. The Court of Appeals noted that the trial judge stated that he had observed the defendant's demeanor at trial and found him competent. Nonetheless, it reversed the lower court and ordered a hearing on defendant's motion because the claims therein raised a factual question as to his competency. Similarly, in Gregori v. United States, 5 Cir., 1957, 243 F.2d 48, the Court of Appeals reversed a decision of the trial court denying a § 2255 motion without a hearing, which motion raised the question of defendant's mental compentency and alleged that he had been medically discharged from the Navy and hospitalized after conviction. In Bishop v. United States, supra, the Court of Appeals affirmed the denial of a § 2255 incompetency motion without a hearing, relying largely upon the trial court's observation

of defendant's demeanor and upon a psychiatric examination prior to trial which found him sane. This decision was reversed in a per curiam opinion by the Supreme Court and the cause remanded for a hearing in the District Court, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835. In Sanders v. United States, 5 Cir., 1953, 205 F.2d 399, the trial court denied a hearing on a § 2255 motion questioning the defendant's mental competency in part because of its observation of his demeanor. This decision was reversed by the Court of Appeals and a hearing ordered. See, also, Norman v. United States, 9 Cir., 1960, 276 F.2d 377; Bell v. United States, 9 Cir., 1959, 269 F.2d 419; Smith v. United States, 9 Cir., 1958, 259 F.2d 125.

In regard to appellant's failure to raise the question of his mental competency at any time during the proceedings taken against him, it should be noted that this court in Cain v. United States, 8 Cir., 1959, 271 F.2d 337, 338, stated that the files and records of the case may "conclusively show that the prisoner is entitled to no relief" and thereby justify the denial of a hearing, if those records demonstrate "that the petitioner had prior opportunities to urge the claims of his motion and failed to do so * * *." Decisions of several courts have held movants not entitled to hearings under § 2255 on their alleged incompetency for that reason. Cason v. United States, 4 Cir., 1955, 220 F.2d 510, certiorari denied 1955, 349 U.S. 966, 75 S.Ct. 899, 99 L.Ed. 1287; Bistram v. United States, D.C. N.D.1960, 180 F.Supp. 501[1]; United States v. Cope, D.C.W.D.Mo.1956, 144 F. Supp. 799. However, in Smith v. United States, 9 Cir., 1959, 267 F.2d 210, the Court of Appeals ordered a hearing upon appellant's motion despite the fact that the lower court had pointed out that he had had an opportunity to but did not raise the question of his mental competency before it. Similarly, the Court of Appeals' opinion in Bishop v. United States, supra, which decision was re-

1. An alternative ground for the holding was that the petition violated the "second or successive motion" limitation of 28 U.S.C.A. § 2255.

versed by the Supreme Court, relied upon the fact that the incompetency contention had not been raised before the trial court. Finally, in Sanders v. United States, supra, the Court of Appeals held that the movant's failure to urge his contention of mental incompetency before the trial court did not prejudice his right to a hearing thereon under § 2255.

The Cain decision of this Circuit did not involve a claim of mental incompetency. It is our conclusion that its rationale and that of other cases applying like reasoning to incompetency contentions does not and should not apply to motions so based, for, if one is mentally incompetent, then, by definition, he cannot be expected to raise that contention before the trial court and thus cannot be prejudiced by his failure to do so.

As to the propriety of the District Court's reliance on the supplemental report filed by the three psychiatrists, the original examination of appellant by those doctors was made at the request of defense counsel, after the trial judge had indicated his willingness to receive any evidence of mitigating circumstances, in order to determine whether or not appellant was then suffering from a brain injury. That initial report found no evidence of any intercranial injury or other brain damage. It admittedly, however, did not address itself to appellant's mental competency. Following appellant's motion to vacate, the District Court requested the three psychiatrists to file a supplemental report dealing with appellant's "mental condition" at the time their examination was made. That report states in detail the history which was obtained from appellant at the time of the original examination. Additionally, it explains that at the earlier date the doctors "went over with him the events that led up to his crime". Under the category of "psychiatric examination", those doctors stated:

"His attention, perception, was normal. His memory was very good for recent and past events. He was oriented for time, place and person. His mental reflexes were active.

There was no evidence of mental confusion. Sensorium was clear. There was no gross disturbance in his emotions. He comprehended well. There was no evidence of any auditory or visual hallucinations or no evidence of any delusions. .

The psychiatric examination showed nothing unusual."

Their report concluded that:

"Our contact with James P. Taylor would force us to the conclusion that he was not insane and that he was mentally competent to be able to understand the proceedings against him and properly to assist in his own defense."

■■ It is established that proceedings following motions to vacate brought under § 2255 must be independent of and separate from the original action. Simmons v. United States, 10 Cir., 1956, 230 F.2d 73, 74, certiorari denied 1956, 351 U.S. 927, 76 S.Ct. 784, 100 L.Ed. 1457; Bruno v. United States, D.C.App.1950, 86 U.S.App.D.C. 118, 180 F.2d 393, 395. Thus, either the "files and records" of the original proceedings must "conclusively show that the prisoner is entitled to no relief" or a hearing must be held which is not ex parte in nature. 28 U.S.C.A. § 2255; United States v. Hayman, 1952, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232. The supplemental report relied upon by the lower court here admittedly adds only a new conclusion, based upon previously obtained evidence, upon a question not before considered. However, it is literally not part of the "files and records" of the initial proceedings and was arrived at through an ex parte procedure. We, therefore, conclude that it could not properly serve as one of the bases for denying appellant a hearing upon his motion.

■ Lastly, as to appellant's subsequent motion for a default judgment on his original claim because the United States failed to reply in the initial proceedings, the District Court's denial was obviously correct. § 2255 provides that notice of a motion to vacate shall be served upon the United States Attorney

**24**

"unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief". The District Court's holding on the original motion to the effect that a hearing thereon was not required, whether or not that conclusion be affirmed on appeal, made notice to the United States Attorney unnecessary and in the absence of such notice, no response by him can be expected.

In conclusion, then, we hold that the appellant was entitled to a hearing on his motion to vacate insofar as it alleged that he was mentally incompetent during the proceedings against him in the District Court.

No. 16,350—Reversed and remanded.

No. 16,351—Affirmed.