James ROACH, Petitioner,

v.

John E. BENNETT and Lou V. Brewer, Wardens, Respondents.

Civ. No. 9-2498-C-2.

United States District Court,
S. D. Iowa, C. D.

Nov. 9, 1970.

Carl A. Saunders, Fort Madison, Iowa, for petitioner.

G. Douglas Essy, Asst. Atty. Gen., Des Moines, Iowa, for respondents.

## MEMORANDUM AND ORDER

HANSON, District Judge.

This ruling is predicated upon a petition for writ of habeas corpus by James

Roach, a state prisoner, attacking his conviction pursuant to a plea of guilty at arraignment on grounds of incompetency to plead.

## I.

A chronology of the case follows: On March 12, 1964, petitioner telephoned Des Moines police and informed them that he had killed his wife; officers immediately picked up petitioner and subsequently located the body of his wife in adjoining Jasper County. Upon the application of petitioner's retained counsel, the petitioner was transferred to the Iowa Mental Health Institute at Mount Pleasant for purposes of psychiatric evaluation from March 20 through March 26. On April 21, 1964, petitioner, in the presence of his counsel, pleaded guilty to second-degree murder and was immediately sentenced to imprisonment of 60 years.

On September 8, 1965, the Lee County District Court denied petitioner's pro se application for a writ of habeas corpus, following a hearing. This decision was upheld by the Iowa Supreme Court in Roach v. Bennett, 260 Iowa 103, 148 N.W.2d 488 (February 7, 1967). Thereafter, petitioner applied to the Federal District Court for the Southern District of Iowa wherein he raised, for the first time, the issue of his competency to enter a plea (and the consequent voluntariness thereof). The District Court denied the petition, but on appeal to the Court of Appeals for the Eighth Circuit, 392 F.2d 743, this order was vacated on April 15, 1968. In its opinion, the Court of Appeals directed a stay of further proceedings in the Federal District Court until such time "that appellant has filed a new petition in the state district court along with an application for appointment of counsel to conduct a plenary hearing on appellant's claims of incompetency or involuntariness of his plea."

Thereafter, on May 7, 1968, the Lee County District Court appointed counsel to represent the petitioner and a plenary hearing was held on June 13, 1969, before the Honorable William S. Cahill.

Findings were filed on July 29, 1969, and petitioner's writ was dismissed. He appealed to the Supreme Court of Iowa which appeal was dismissed on grounds of untimely filing.

The Court of Appeals directed this Court to retain jurisdiction and the matter now stands as follows: This Court has before it the petition for habeas corpus by a state prisoner who pled guilty at arraignment and who now attacks his conviction on grounds of incompetency to plead; a *nunc pro tunc* hearing was ordered 4 years after conviction, the hearing was held over 5 years after conviction, and the petition insofar as now present for final disposition in the federal courts follows the conviction by 6 years. Petitioner argues that compliance with the mandate of the Court of Appeals has not been accomplished because of the refusal by the Supreme Court of Iowa to entertain an appeal from the decision of the Lee County District Court.

Petitioner has no further remedies in the state courts and properly seeks relief in the federal courts. This Court deems a further evidentiary hearing in the federal court to review the adequacy of the state proceedings unnecessary because, on the present state of the record, petitioner's treatment is not in accord with the current law concerning belated claims of incompetency at the time of trial or of entering a plea.

The current line of cases holding that the conviction of a legally incompetent person violates due process is commonly traced from Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), reported below in 96 U.S.App. D.C. 117, 223 F.2d 582. Bishop, a federal prisoner attacked his conviction for murder following a jury trial in the District Court for the District of Columbia. Bishop, convicted and condemned in 1938, was found to be insane in a 1940 mental inquisition and hospitalized. In March, 1952, the President commuted the death sentence to life imprisonment, and in October, 1952, Bishop was certified sane and returned to the penitentiary. In

1954, he filed a Section 2255 motion to vacate judgment, alleging, *inter alia,* incompetency at the time of trial. The District Court, on the basis of the record including a pretrial report by a psychiatrist, denied the motion and was affirmed by the Court of Appeals for the D.C. Circuit in 1955. On petition for writ of certiorari, the Supreme Court in 1956 per curiam vacated the judgment and remanded the case to the District Court for a hearing as to Bishop's sanity at the time of his trial.

Although not citing *Bishop,* the Supreme Court in 1960 apparently extended and expanded upon that holding in an Eighth Circuit case, Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. Dusky's case was, however, a direct appeal upon conviction rather than a collateral attack. The defendant was arraigned on federal kidnapping charges in September, 1958, and following a not guilty plea, was committed under 18 U.S.C.A., Section 4244, for a 4-month mental examination, followed by a hearing in January, 1959. Medical reports and testimony of a member of the medical center psychiatric staff stated that while the defendant was oriented as to time, place and person, he was unable to properly understand the proceedings against him and unable to adequately assist in his defense. The District Court (W.D.Mo.) found the defendant competent to stand trial and he was convicted following a jury verdict in March, 1959. On appeal to the Eighth Circuit, that Court affirmed the judgment in November, 1959, stating *inter alia:*

> "Under 18 U.S.C. § 4244, the duty and responsibility of determining whether a defendant who has a mental illness or defect is or is not competent to stand trial is that of the trial court, and that his determination in that regard cannot be set aside on review unless clearly arbitrary or unwarranted.

> The evidence of the psychiatrists as to the competency of the defendant to stand trial was not unequivocal, and it was not shown that he was unable

to understand the proceedings against him. How much mental capacity or alertness a defendant must have to be able to assist his counsel in a case where the defense is insanity, is, we think, a question of fact for the trial court. * * * " (271 F.2d 385, 397).

The Supreme Court granted certiorari and in April, 1960, in a per curiam opinion reversed the judgment of the Court of Appeals affirming the judgment of conviction, and remanded the case to the District Court for a new hearing to ascertain petitioner's present competency to stand trial, with *orders for a new trial if petitioner was found competent.* The Court said:

> " 'the record in this case does not sufficiently support the findings of competency to stand trial' for to support those findings under 18 U.S.C. § 4244, the district judge 'would need more information than this record presents.' We also agree with the suggestion of the Solicitor General that it is not enough for the district judge to find that 'the defendant (is) oriented to time and place and (has) some recollection of events,' but that the 'test must be whether he has *sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'* " (Emphasis added).

> "In view of the doubts and ambiguities regarding the legal significance of the psychiatric testimony in this case and the resulting *difficulties of retrospectively determining the petititioner's competency as of more than a year ago,* we reverse * * * for a new hearing to ascertain petitioner's present competency to stand trial, and for a *new trial if petitioner is found competent.*" (Emphasis added). 362 U.S. 402–403, 80 S.Ct. 788.

Title 18 U.S.C., Section 4244, enacted in 1949, applies only to federal defendants. The Iowa Code, Chapter 783, provides for the determination of sanity of a criminal defendant at any stage of the

trial. However, Chapter 783 and specifically section 783.1 does not define sanity or insanity. This section has been in the Iowa Code in substantially the same words since 1851. (Code 1851, Secs. 3260, 3261). The standards applied by the Supreme Court of Iowa to the predecessor of Section 783.1, at least since 1949, have been the "capacity to understand the nature and object of the proceedings against him and to conduct his defense in a rational manner." State v. Bruntlett, 240 Iowa 338, 36 N.W.2d 450, 458, Mulroney concurring specially (1949). This standard was more recently affirmed in State v. McCollom, 260 Iowa 977, 151 N.W.2d 519, 524 (1967). Thus, it appears that since 1949 both federal and Iowa law have been substantially identical in defining sanity at the time of trial.

*Dusky* involved a direct appeal rather than collateral attack upon the conviction, and the defendant there had not waived trial as did petitioner. However, it is noteworthy that the Court in granting a hearing to determine competency where the trial had taken place one year earlier, ordered a new trial. The critical factor appeared to be the difficulties of retrospectively determining competency and the Supreme Court gave no indication that its reasoning would be different in the case of a collateral attack. This Court sees no logical basis for distinguishing between direct appeal and collateral attack insofar as this point is concerned.

Almost three and one-half months after the Supreme Court's decision in *Dusky*, the Eighth Circuit extended the right to a hearing on the issue of competency at the time of conviction to federal prisoners who had waived trial, and who subsequently attacked their sentences under the provisions of 28 U.S.C.A., Section 2255. Taylor v. United States, 282 F. 2d 16 (1960). Taylor, represented by counsel, pleaded guilty in April 1956, after a series of some 16 motions had been presented and argued, and was sentenced in July of that year. Subsequently, Tayor moved to vacate the

sentences under Section 2255 alleging, *inter alia*, that he was incompetent at all times during the proceedings. The District Court for Minnesota, having observed an F.B.I. report, several psychiatric reports, five exhibits containing military and medical records, as well as Taylor's behavior on eight separate occasions, denied relief. The Court of Appeals held that Taylor's motion to vacate and the exhibits accompanying it raised a question of fact as to his competency which was not conclusively resolved by the record.

Regarding Taylor's failure to raise the question of his mental competency at any time during the proceedings against him and his waiver of trial, the Court distinguished its 1959 decision in Cain v. United States, 271 F.2d 337, wherein on the basis of the record it had denied relief on the grounds that *Cain* did not involve a claim of mental incompetency. The Court said, "It is our conclusion that its [Cain's] rationale and that of other cases applying like reasoning to incompetency contentions does not and should not apply to motions so based, for, if one is mentally incompetent, then, by definition, he cannot be expected to raise that contention before the trial court and thus cannot be prejudiced by his failure to do so." 282 F.2d at 23. This holding was later cited with approval by the Supreme Court in Pate v. Robinson, 383 U.S. 375 at 384, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966). However, the Eighth Circuit in reaching its decision in 1960, four years after the sentencing (and three and one-half months after *Dusky*) did not mention the problem of retrospectively determining Taylor's competency, nor did it make any mention of a new trial.

Two years later, in 1962, the Eighth Circuit again considered a Section 2255 motion to vacate sentence on the grounds of competency to stand trial where that issue had never been raised at trial. Hayes v. United States, 305 F.2d 540. The defendant there had represented himself throughout the pre-trial proceedings and the trial under careful super-

vision of the trial judge who also appointed an attorney to assist the defendant. The Eighth Circuit carefully reviewed the entire proceedings on appeal and affirmed. 296 F.2d 657 (1961). Subsequently, the defendant claimed that drugs had been administered to him in his cell. The trial judge denied the Section 2255 motion since in view of his long and many contacts with the defendant he felt assured of the latter's competency. The Court of Appeals reversed the District Court's denial of relief, concluding, "Appellant's expressions, conduct and action in the trial may have capacity to shed some probative light on the question. They cannot in themselves be declared to be legally conclusive that no narcotic drugs were administered to appellant, or that, if any such drugs were administered, they had been of a nature or in an amount which could not have affected his powers and faculties in the trial proceedings."

In 1963, the Supreme Court, apparently without citing *Taylor*, reached the same holding in ordering a hearing on the issue of mental competency for a federal prisoner who had signed a waiver of indictment and pleaded guilty to an information in 1959. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148. Sanders also attacked his sentence under Sec. 2255, and the Court remanded to the District Court (N.D.Cal.) for a hearing. At issue in *Sanders* were successive applications for federal collateral relief. The court pointed out that where prior applications were not involved, the governing standards were those of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

In 1964, the Eighth Circuit again considered the issue of a plenary hearing on mental competency, this time on a petition for writ of habeas corpus from a military prisoner. Swisher v. United States, 326 F.2d 97. At a court martial, the question of Swisher's sanity at the time of offense was reviewed and he was found sane. No issue was raised as to the defendant's sanity at the time of trial. After pursuing all provisions of the Uniform Code of Military Justice for attacking collaterally his conviction and sentence on the grounds of incompetency at trial, Swisher petitioned the District Court (W.D.Mo.) which denied him relief. The Eighth Circuit reversed and remanded "to the District Court for further proceedings in accordance with due process of law."

The Court of Appeals did not cite *Dusky* nor did it mention the question of a new trial. However, the Court did hint indirectly that state prisoners would be entitled, at the minimum, to all relief available to military prisoners upon writs of habeas corpus, when it said,

"In Burns v. Wilson, 346 U.S. 137, at l. c. 139, 73 S.Ct. 1045, at l. c. 1047, 97 L.Ed. 1508 * * * it is said:

'The statute which vests federal courts with jurisdiction over applications for habeas corpus from persons confined by the military courts is the same statute which vests them with jurisdiction over the applications of persons confined by the civil courts. But in military habeas corpus the inquiry, the scope of matters open for review, has always been more narrow than in civil cases.' "

326 F.2d at 98.

On March 7, 1966, the Supreme Court decided Pate, Warden v. Robinson, reported at 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. The facts of that case make it appropriate to consider in some detail. The respondent was convicted in a state court in 1959 of murdering his common-law wife and given a life sentence. It was conceded at trial that he had shot and killed her, but counsel claimed that respondent was insane at the time of the incident and also not competent to stand trial. However, counsel never formally requested the court to conduct a hearing on the respondent's capacity to stand trial pursuant to an Illinois statute similar to section 783.1 of the Iowa Code. It was uncontradicted that respondent had a long history of

disturbed behavior, that he had been confined as a psychopathic patient, and had committed acts of violence including the killing of his infant son and an attempted suicide. Four defense witnesses testified that the respondent was insane. The trial court declined rebuttal medical testimony as to respondent's sanity, deeming sufficient a stipulation that a doctor would testify that when respondent was examined a few months before the .trial he knew the nature of the charges and could cooperate with his counsel.

The trial court's rejection of contentions as to respondent's sanity was challenged on appeal as a deprivation of due process of law under the Fourteenth Amendment. The State Supreme Court affirmed the conviction on the grounds that no hearing on mental capacity to stand trial had been requested and that the evidence was insufficient to require the trial court to conduct a sanity hearing *sua sponte* or to raise a "reasonable doubt" as to respondent's sanity at the time of the homicide. The Supreme Court denied certiorari. The District Court (N.D.Ill.) denied respondent's subsequently filed petition for writ of habeas corpus. The Seventh Circuit reversed, holding that the unduly hurried trial did not provide a fair opportunity for development of facts on the insanity issues and remanded the case to the District Court for a limited hearing as to the sanity of respondent at the time of the homicide and as to whether he was constitutionally entitled to a hearing upon his competence to stand trial. On certiorari to the Supreme Court it was held: (1) The evidence raised a sufficient doubt as to Robinson's competence to stand trial so that respondent was deprived of due process of law under the Fourteenth Amendment by the trial court's failure to afford him a hearing on that issue; and (2)

"Having determined that Robinson's constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial, we direct that *the writ of habeas corpus must issue and Robinson be discharged, unless the State gives him a new trial within a reasonable time.* This disposition accords with the procedure adopted in Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). We there determined that since the state court had applied an erroneous standard to judge the admissibility of a confession, the 'defendant should have the opportunity to have all issues which may be determinative of his guilt tried by a state judge or a state jury under appropriate state procedures which conform to the requirements of the Fourteenth Amendment.' At 547–548, 81 S.Ct. at 743[–744]. It has been pressed upon us that it would be sufficient for the state court to hold a limited hearing as to Robinson's mental competence at the time he was tried in 1959. If he were found competent, the judgment against him would stand. But *we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial.* Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record. That Robinson's hearing would be held six years after the fact aggravates these difficulties. This need for concurrent determination distinguishes the present case from Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), where we held that on remand the State could discharge its constitutional obligation by giving the accused a separate hearing on the voluntariness of his confession.

If the State elects to retry Robinson, it will of course be open to him to raise the question of his competence to stand trial at that time and to request a special hearing thereon. In the event a sufficient doubt exists as to his present competence such a hear-

ing must be held. If found competent to stand trial, Robinson would have the usual defenses available to an accused." (Emphasis added) 383 U.S. at 386–387, 86 S.Ct. at 842–843.

In the instant case, five years passed between the conviction and the state hearing. However, it does not seem likely that the Court in *Robinson* intended to set a 6-year threshold, particularly in light of *Dusky* wherein the order for a hearing and a new trial occurred only one year after the original conviction. A possibly more substantial distinction between the present case and *Robinson* is that the latter defendant was convicted after a full trial.[1] But the Eighth Circuit in the *Taylor* case, *supra*, had obliterated this distinction in 1960, and the Supreme Court itself followed in 1963 with *Sanders*. Concerning the issue of waiver, Mr. Justice Clark for the Court in *Robinson* said:

> "The State insists that Robinson deliberately waived the defense of his competence to stand trial by failing to demand a sanity hearing as provided by Illinois law. But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial. See Taylor v. United States, 282 F.2d 16, 23 (C.A. 8th Cir. 1960)."

Mr. Justice Harlan, dissenting with Mr. Justice Black on the issue of whether the record should have suggested Robinson's incompetence to the trial judge, was in accord with the majority on both the issues of waiver and a new trial:

> "Waiver is not an apposite concept where we premise a defendant so deranged that he cannot oversee his lawyers. Since our further premise is that the trial judge should and could

have avoided the error, a new trial seems not too drastic an exaction in view of the proof problems arising after a significant lapse of time."[1]

The footnote to Justice Harlan's opinion is here included:

> "[1] The constitutional violation alleged is the failure to make an inquiry. In the more usual case, the simple claim that a defendant was convicted while incompetent during the trial, there is of course no proof of a constitutional violation until that incompetence is established in appropriate proceedings."

The Eighth Circuit has never cited Pate v. Robinson, nor until the instant case did the Eighth Circuit have a case involving a hearing *nunc pro tunc* on the issue of competency.[2] However, a year later, the Ninth Circuit, Harvey M. Johnsen, Senior Circuit Judge of the Eighth Circuit, sitting by designation and presiding, cited Robinson extensively in affirming a District Court's order that a state prisoner be released unless the State of Washington granted a new trial within 120 days. Rhay v. White, 385 F.2d 883 (1967). White had been convicted on two counts of murder and condemned on one; the judgments were affirmed by the state supreme court and thereafter White unsuccessfully engaged in collateral attack on various grounds and exhausted his state remedies. The District Court proceedings were unreported and the Ninth Circuit opinion is sparse in detail, but it appears that the District Court (E.D.Wash.) did conduct an evidentiary hearing six years after the trial. Whether the hearing occurred prior to the *Robinson* decision is not indicated. The District Court granted the writ on the single ground that the elements before the trial court presented such a substantial question of possible

---

1. Robinson's counsel never requested the trial court to make a determination of competency, although two of the defense witnesses testified to the belief of contemporaneous insanity and counsel in closing argument claimed that his client should be found presently insane.

2. Shortly after the preparation of this opinion, the Eighth Circuit did cite Pate v. Robinson in affirming a conviction on appeal from this Court. United States v. Mills, 434 F.2d 266 (1970).

doubt as to White's competency to stand trial that due process demanded that the court should have held a hearing and made a determination of the question even though no request was made by counsel for such a hearing. In affirming, Judge Johnsen stated:

"[W]e can see no question as to the right of the District Court here, under Pate v. Robinson, to require that White be afforded the opportunity to have the matter of his competency to be tried determined in portraying relationship to his trial proceedings, as ought to have been done on the circumstances which were involved. Such a determination is, as in Pate v. Robinson, processively [sic] entitled to be called for here because of the difficulties which would be inherent in now satisfyingly getting at the indications and conditions of the original trial. Among these are the lapse of six years which has occurred since the time of that trial; the fact that the psychiatrists' examinations and diagnoses as then engaged in had been without any thought or focus on this question as to that trial; and the apparent lack of definite recollection as to conditions and incidents involved as to White, which is demonstrated by the testimony of the trial judge above." 385 F.2d at 886.

The language of *Robinson* has not been accepted universally at face value by the lower courts. In a number of subsequent cases, Circuit and District courts have avoided its impact by deciding on the record that there was insufficient new evidence to warrant a hearing. Since in the instant case the Court of Appeals did order a hearing, those cases need not be discussed.

None of the cases heretofore discussed, from *Bishop* (1956) to *Robinson* (1966), involved all of the factual matters within the instant petition. *Robinson* is most closely in point, being distinguishable in that the defendant there demanded trial. The waiving of trial has not affected the granting of new hearings for federal prisoners in the Eighth Circuit, *Taylor, supra*, or the Supreme Court, *Sanders, supra*, and in numerous cases the courts have stated that a hearing as to competency could not be waived by state or federal prisoners. Of the cases following *Robinson*, known to this Court, only Clonch v. Boles, 419 F.2d 393 (4th Cir. 1969), involved a state prisoner who had waived trial. There the Court of Appeals ordered a new trial conditioned upon whether the trial judge was under a duty sua sponte to inquire into the issue of the accused's competency if a reasonable doubt thereto arose. In Iowa, the trial judge is under such a duty as provided in Section 783.1.

A cursory examination of the record in this matter demonstrates the futility of attempting to now evaluate petitioner's competency at the time he entered his plea in 1964. The evaluation by the Mental Health Institute at Mount Pleasant following petitioner's arrest and preceding his arraignment failed to state any medical opinion as to whether petitioner had the capacity to understand the nature of the proceedings against him or the capacity to assist in his defense—the prevailing state and federal standards. The only psychiatrist to testify at the state evidentiary hearing in 1969, appearing as an expert witness on behalf of petitioner, had never previously seen petitioner and based his testimony upon Roach's medical record. He stated in direct examination that he thought petitioner would not have had the capacity to understand the criminal proceedings nor the capacity to conduct his own defense. On cross-examination, the psychiatrist stated that it would be possible for petitioner to understand the nature of the charges against him based upon the evaluation of petitioner's judgment made by the staff psychiatrist at Mount Pleasant, but he felt that the evaluation of "judgment" was ambiguous.

It appears to this Court that when *Robinson* is read with the earlier cases, the Supreme Court is saying that peti-

tioner's case is exactly the kind in which a hearing nunc pro tunc as to competency at the time of plea and conviction is inadequate and that a new trial with contemporaneous hearing must be held, or the petitioner must be released.

This Court finds unnecessary the consideration of whether the dismissal of petitioner's appeal to the Supreme Court of Iowa denied petitioner the benefit of the mandate of the Eighth Circuit Court of Appeals. The legal issue controlling herein has never been raised by petitioner before this or any other court. However, petitioner could come before this Court at any time on the *existing* record and advocate the application of *Robinson* to his case. There is now, and would be, no reason to conduct a further evidentiary hearing before deciding in petitioner's favor. The transcript of the proceedings before Judge Cahill substantiates the position now taken by this Court. The Courts cannot be bound in their consideration of questions of law concerning personal liberties by the failure of a litigant to assert the applicable law of which the Court is well aware.

Accordingly, the following orders ensue:

It is ordered that the writ of habeas corpus be and is hereby issued effective one hundred twenty (120) days from the date of this order, unless the State of Iowa chooses to prosecute Roach for the same crime prior to the termination of the one hundred twenty (120) day period.

It is further ordered that in the event the State chooses to re-try Roach, petitioner must be afforded the opportunity to have his *present* competency to stand trial *determined* under the procedures of the Criminal Code of Iowa and specifically sections 783.1 et seq.

It is further ordered that in the event that the State does not initiate the prosecution of petitioner within one hundred twenty (120) days from the date of this order, Roach must be and is hereby ordered discharged.