Robert Wilburn **FISHER**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 8747.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 8, 1963.

Decided May 10, 1963.

Emmet J. Bondurant, Court-assigned Counsel, for appellant.

Robert W. Fisher, pro se, on brief.

Terrell L. Glenn, U. S. Atty. (Marvin L. Smith, Asst. U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

 · After pleading guilty in 1961 to a charge of violating the Dyer Act, 18 U.S.C.A. § 2312, Robert W. Fisher was sentenced to a three-year term in the United States Penitentiary at Atlanta, Georgia. Less than seven months later he moved in the District Court to vacate the sentence. The motion asserted that he was mentally incompetent at the time of his arraignment and trial and that his mental condition, which he describes as "depressive mania, kleptomania and schizophrenia acute," was such that he was unable to comprehend the nature of the proceedings, to assist counsel in his defense, or to enter an intelligent plea to the indictment.[1]

The District Court dismissed the motion without a hearing on the ground that it conclusively appeared that Fisher was entitled to no relief under 28 U.S.C.A. § 2255 and that his remedy, if any, was provided by 18 U.S.C.A. § 4245. On this appeal, we hold that the District Court was in error. While it is true this this ruling is, as the United States Attorney argues, in accord with an earlier decision of this court, Cason v. United States, 220 F.2d 510 (4th Cir. 1955), we had occasion this term to reconsider that decision and concluded, following Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), that the issue of the accused's mental capacity to stand trial may be raised by motion under section 2255 without first resorting to the provisions of section 4245.[2] Nelms v. United States,

---

1. Fisher's motion, prepared and filed pro se, alleged in greater detail "that he did not intelligently comprehend the nature and consequences of the judicial proceedings that he was subjected to and that he was unable and incapable of assisting in his defense of the accusations because of his severe mental infirmities; that his severe mental infirmities rendered him completely incompetent to stand trial, or to have waived his constitutional rights to trial by jury, or to have presented mitigating facts to the court, that his moral and mental faculties were, and are, so completely impaired and deranged that he was, and is, incapable of distinguishing between right and wrong; * * * that he may have been physically present at the sentencing proceedings and waiver of his constitutional rights but he was mentally absent because of his mental and moral defects; that his mental and moral defects were, and are, the only cause of his criminal acts and behavior. * * * Petitioner does not remember whether or not he violated any laws or perpetrated the crimes for which he was ultimately convicted nor whether he was or was not in the court's room on October 25, 1961."

2. Section 4245 provides, as follows:

 "Whenever the Director of the Bureau of Prisons shall certify that a person convicted of an offense against the United States has been examined by the board of examiners * * * and that there is probable cause to believe that such person was mentally incompetent at the time of his trial, provided the issue of mental incompetency was not raised and determined before or during said trial, the Attorney General shall transmit the report of the board of examiners and the certificate of the Director of the Bureau of Prisons to the clerk of the district court wherein the conviction was had. Whereupon the court shall hold a hearing to determine the mental competency of the accused * * *. If the court shall find that the accused was mentally incompetent at the time of his trial, the court shall vacate the judgment of conviction and grant a new trial."

 Thus the relief provided is quite similar to that which may be obtained by motion under § 2255, but there is a fundamental difference as to the manner in which the two statutes may be invoked. Unlike § 2255, a proceeding under § 4245 is not

318 F.2d 150 (4th Cir.1963), and other authorities cited therein. See also, Pledger v. United States, 272 F.2d 69, 70 (4th Cir.1959); United States v. McNicholas, 298 F.2d 914, 916 (4th Cir. 1962). The other circuits, with but one exception, have adopted the same position after thorough discussion,[3] and the point requires no elaboration here. Therefore, the case must be remanded for a hearing on the question of Fisher's sanity at the time he pleaded guilty. Bishop v. United States, supra; Frame v. Hudspeth, 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989 (1940). See also, Catalano v. United States, 298 F.2d 616, 618 (2d Cir.1962), and cases cited therein.

■■ The Government nevertheless insists that the facts alleged are insufficient to warrant a hearing. It is true that bald assertions of insanity, unsubstantiated by a recital of credible facts, would justify dismissal without further proceedings.[4] But while it does not appear that there has ever been a legal adjudication of Fisher's mental status, the papers filed with his motion offer a confirmed history of mental illness. Copies of official correspondence from the Department of the Army and the Chief Medical Officer of the Atlanta Penitentiary indicate that Fisher was discharged from military service in 1943, after six months of psychiatric study and treatment, by reason of "psychoneurosis, anxiety type, severe." It further appears that Fisher has been afflicted in recent years by a spinal disorder, for which he was hospitalized in 1958. This malady, when coupled with the disclosed fact that he also suffers from pre-existing conditions of the heart, lungs, stomach, throat, and thyroid, may pose an aggravating factor bearing on his present mental condition. Then too, the transcript of his trial discloses that just before sentence was imposed counsel informed the judge that his client had been unable to recall the acts with which he was charged. In the words of his lawyer, "Fisher is unstable."

initiated by the prisoner himself. The nature of the remedy compels the conclusion that the latter procedure "is primarily meant to safeguard the rights of such insane prisoners as are not competent enough to seek * * * judicial assistance in their own behalf, by requiring an official of the United States to bring to the attention of the trial court all cases in which a miscarriage of justice may have occurred due to the inability of the accused properly to defend himself at his trial." Gregori v. United States, 243 F.2d 48, 55 (5th Cir. 1957); Simmons v. United States, 253 F.2d 909, 912–913 (8th Cir. 1958); United States v. Cannon, 310 F.2d 841, 843 (2d Cir. 1962).

3. That a federal prisoner need not seek a certificate of probable cause from the prison authorities pursuant to § 4245 before proceeding on a § 2255 motion is made abundantly clear in the thoughtful and comprehensive opinion of Judge Moore in United States v. Cannon, 310 F.2d 841, 843–844 (2d Cir. 1962). See also, Gregori v. United States, 243 F.2d 48, 54–55 (5th Cir. 1957); Praylow v. United States, 298 F.2d 792, 793 (5th Cir. 1962); United States v. Thomas, 291 F.2d 478, 480 (6th Cir. 1961); Milani v. United States, 304 F.2d 627, 628 (7th Cir. 1962); Simmons v. United States, 253 F.2d 909, 912–913 (8th Cir. 1958); Burdette v. Settle, 296 F.2d 687 (8th Cir. 1961); Smith v. United States, 267 F.2d 210, 212 (9th Cir. 1959). Even if the board of examiners conducts a psychiatric examination and refuses to issue a certificate of probable cause to believe that the accused was mentally incompetent at the time of his trial, the question may still remain open to redetermination nunc pro tunc in a § 2255 motion. Seidner v. United States, 104 U.S.App.D.C. 214, 260 F.2d 732 (1958).

Only the Tenth Circuit appears to harbor lingering doubts. It continues to hold that federal courts cannot hear a § 2255 motion based on mental incompetency in the absence of § 4245 certification. Nunley v. Chandler, 308 F.2d 223, 224 (10th Cir. 1962); Gordon v. United States, 250 F.2d 676 (10th Cir. 1957). But cf., Johnston v. United States, 292 F.2d 51, 53 (10th Cir. 1961) (allegations of *temporary* insanity).

4. United States v. McNicholas, 298 F.2d 914, 916 (4th Cir. 1962); Hartman v. United States, 310 F.2d 447, 448 (6th Cir. 1962); Hayes v. United States, 305 F.2d 540, 543 (8th Cir. 1962); Santos v. United States, 305 F.2d 372, 373 (1st Cir. 1962); Burrow v. United States, 301 F.2d 442, 443 (8th Cir. 1962).

The record before us is sketchy, but we think that it furnishes sufficient factual basis to require full exploration by the District Court. Reference is made to Meadows v. United States, 282 F.2d 942 (5th Cir.1960), where, as here, the claim of mental incapacity was supported by the single allegation that, years earlier, the prisoner had been "discharged from the armed forces as a psychoneurosis patient." This allegation "of the prior determination of a mental illness," concluded the Fifth Circuit, "takes the motion out of the category of frivolous claims and requires a hearing."[5] We share that view.

Reversed and remanded for a hearing.

---

5. A hearing was ordered in Nelms v. United States, 318 F.2d 150 (4th Cir. 1963), where Army medical records disclosed that prior to his 1947 discharge the prisoner had been treated for various psychiatric disorders. See also, Taylor v. United States, 282 F.2d 16 (8th Cir. 1960); Smith v. United States, 267 F.2d 210 (9th Cir. 1959); Gregori v. United States, 243 F.2d 48 (5th Cir. 1957). And in United States v. Cannon, 310 F.2d 341 (2d Cir. 1962), it was assumed without discussion that the prisoner made an adequate showing where he alleged that he had received an Army medical discharge and had been later certified to be mentally ill by state authorities in 1948, although it also appeared that he had subsequently been adjudged competent and released to stand trial for a state offense.