**Angel Luis CRUZ, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**Civ. A. No. 8509.**

United States District Court
D. South Carolina,
Charleston Division.

Nov. 10, 1965.

Wm. H. Vaughan, Jr., Charleston, S. C., Court Appointed Counsel for Petitioner.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., by Klyde Robinson, Asst. U. S. Atty., Charleston, S. C., for respondent.

SIMONS, District Judge.

This matter is before the court upon petitioner's motion to vacate sentence pursuant to 28 U.S.C. § 2255 upon grounds that: [1] Petitioner did not knowingly and intelligently waive assistance of counsel at the time of his plea of guilty; and [2] Petitioner was mentally incompetent at the time of plea of guilty. The record reflects that petitioner was charged in a three-count information with violations of Title 21, § 176a and § 184a, and Title 26, § 4744[a] U.S.C. Petitioner was arraigned before the court for the Eastern District of South Carolina on September 15, 1964, at which time he waived counsel after being advised of his constitutional rights to have counsel appointed; agreed to proceed by information in lieu of indictment; pleaded guilty to count 3 of said information charging him with violation of Title 26, § 4744(a), United States Code,[1] and was sentenced to the custody of the attorney general for a period of two years, the minimum allowed by the statute.

On October 30, 1964 petitioner Cruz filed motion *in forma pauperis*, pursuant to Title 28, U.S.C., § 2255, seeking to vacate the sentence and judgment upon various grounds; among which were [a] that defendant did not intelligently and knowingly waive counsel at the time of his arraignment and his plea of guilty; [b] that defendant was insane at the time crime was committed; [c] that defendant should have been examined as to his mental condition prior to entering a plea to the substantive offense charged; and [d] that defendant was mentally in-

competent at the time he entered his plea. He also alleged that he had been confined in several institutions for treatment of mental disorders from September 1963 until February 1964. Petitioner was granted leave to proceed *in forma pauperis* pursuant to Title 28, U.S.C., § 1915, and counsel was appointed to represent him in this matter.

By order dated October 30, 1964, the United States Attorney was ordered to show cause why a hearing should not be held and the prayer of petitioner's motion granted. Pursuant to request by United States Attorney, the court granted extension of time for Return to its Rule to Show Cause in order that petitioner Cruz could be submitted to a psychiatric examination at the Federal institution in which he was incarcerated, pursuant to Title 18, § 4241 and § 4245 of the United States Code. A Return to the Rule was filed by the United States Attorney on March 1, 1965, in which respondent asserted that the transcript of the proceedings at the time of arraignment conclusively shows: [1] That petitioner knowingly and intelligently waived assistance of counsel in open court; [2] That petitioner cannot collaterally attack his conviction on the ground that he was temporarily insane at the time of the commission of the offense; and [3] That the result of the psychiatric examination conducted by the Board of Psychiatric Examiners of the Bureau of Prisons, pursuant to § 4241 and § 4245, supra, reveals that petitioner Cruz was at the time he was examined fully competent to stand trial, and that the Board reached the conclusion that it was reasonable to pre-

1. "§ 4744. Unlawful possession
"(a) Persons in general.—It shall be unlawful for any person who is a transferee required to pay the transfer tax inposed by section 4741(a)—
"(1) to acquire or otherwise obtain any marihuana without having paid such tax, or
"(2) to transport or conceal, or in any manner facilitate the transportation or concealment of, any marihuana so acquired or obtained. Proof that any person shall have had in his possession any marihuana

and shall have failed, after reasonable notice and demand by the Secretary or is [*sic*] delegate, to produce the order form required by section 4742 to be retained by him shall be presumptive evidence of guilt under this subsection and of liability for the tax imposed by section 4741(a)."
Charges 1 and 2 of the information charging petitioner with violations of § 176a and § 184a of Title 21 of the United States Code were nol prossed at the time of arraignment by the United States Attorney.

sume that at the time of his arraignment and guilty plea on September 15, 1964, he was not psychotic, that he was able to understand the nature of the proceedings against him, and that petitioner has been "without psychosis at all subsequent times."

The Return of the District Attorney verified the fact that petitioner was confined to different hospitals in New York City from October 3, 1963 to February 14, 1964 for treatment of mental disorders, all prior to the commission of the offense herein.

In view of these circumstances, the court concluded that petitioner was entitled to a hearing on his motion, in order to determine his mental condition at the time of his plea of guilty, and also to determine whether petitioner intelligently and understandingly waived assistance of counsel.[2]

Upon request of counsel for petitioner, the court delayed the hearing until he had had an opportunity to correspond with petitioner and the various hospitals in which petitioner had been hospitalized in New York City prior to commission of the offense for which he was convicted. With consent of counsel for petitioner and respondent hearing was held by court on October 21, 1965, with parties being permitted to incorporate into the record such evidence as they desired. Petitioner's counsel advised the court that he agreed to proceed without the presence of petitioner at the hearing.[3]

The transcript of petitioner's arraignment and plea, which was made a part of the record herein, shows that no issue of insanity was raised by petitioner at that time. Although the presentence report which was made available to the court prior to sentence being pronounced upon the defendant did contain a narrative history of petitioner's prior criminal record, and his hospitalization for mental disorders there was nothing therein sufficient to raise any doubt as to petitioner's mental competence, or as to his ability to fully understand the charges against him and all of his rights, as fully explained to him by the court. Under the authorities as we interpret them, petitioner cannot now collaterally attack his conviction on grounds of temporary insanity at the time of the commission of the offense, since such issue was not raised prior to his plea of guilty and sentencing by the court.[4]

At the hearing, petitioner's able court-appointed counsel argued that petitioner is entitled to have the judgment and sentence set aside upon the following grounds: [1] That petitioner did not intelligently waive counsel when arraigned because he was not advised at the time of his plea of the possible defense of insanity at the time of the commission of the crime; and [2] that he was mentally incompetent at the time of his plea of guilty. He further contended that the state of petitioner's mental condition at the time of his arraignment could not conclusively be determined, unless plaintiff were returned for psychiatric examination by a private examiner. The court was urged to have petitioner examined at this time by a private psychiatrist of petitioner's choosing.

In support of petitioner's allegation of insanity at the time of his arraignment and his inability to intelligently and knowingly waive counsel, attorney for petitioner submitted a record of petitioner's hospitalization in the Manhattan State Hospital, New York City. This record reflects that petitioner was ad-

2. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 [1956]; Fisher v. United States, 4 Cir., 317 F.2d 352 [1963].

3. Section 2255, Title 28, U.S.C., provides that "[a] court may entertain and determine such motion without requiring the production of the prisoner at the hearing."

4. Bishop v. United States, 96 U.S.App. D.C. 117, 223 F.2d 582 [1955], reversed on other grounds 350 U.S. 961, 76 S.Ct. 440; Taylor v. United States, 282 F.2d 16 [8th Cir. 1960]; United States v. Lawrenson, 210 F.Supp. 422 [D.C.Md. 1962], affd. 4th Cir., 315 F.2d 612 [1963], cert. den. 373 U.S. 938, 83 S.Ct. 1542, 10 L.Ed.2d 693.

mitted to the Manhattan State Hospital on October 11, 1963; that he was 30 years of age when admitted, was married, had completed the first year of high school, and prior to his admission was employed as a merchant seaman. It appears that petitioner was admitted to the hospital at this time following an altercation with his roommate aboard ship while on a cruise to India. He was taken to a hospital in India and flown from there to a hospital in New York by the shipping company. Although his insight and judgment seemed good upon admittance to the hospital he was diagnosed as "schizophrenia, paranoid". Patient remained in hospital receiving treatment until February 14, 1964, when he was ordered to report to Ward's Island Aftercare Clinic. He was subsequently released to the custody of his wife in New York City on March 26, 1964, with a final diagnosis of "schizophrenia, paranoid type". He reported to the "After Care" clinic on February 20, 1964, April 7, 1964 and June 2, 1964 at which time he was last seen. The hospital record indicates that when last seen on June 2, 1964, "he was in good contact with no overt symptomatology. He requested permission to go to sea and was told to take that up with the United States Public Health Service. He was still receiving medication. His next appointment was for July 28, 1964, which he did not keep." The final notation on the hospital record dated July 30, 1965 reflects that he was officially discharged from convalescent care by the hospital on March 4, 1965, after being informed on February 2, 1965 of his arrest for possession of marijuana and his having been sentenced to two years. There is a further note at this time of a diagnosis of "schizophrenia, paranoid type," condition "unimproved".

As hereinabove stated, following petitioner's motion to set aside the sentence and judgment, at the request of the United States Attorney, pursuant to provisions of Title 18, Sections 4241 and 4245, he was psychiatrically examined by the Board of Psychiatric Examiners of the Bureau of Prisons at the Atlanta Penitentiary. The Board's report dated January 14, 1965, and addendum dated February 18, 1965, reflect that petitioner had been incarcerated for three months when the examination was completed. The Board of Examiners was aware that petitioner had been hospitalized previously for mental disturbance at the Manhatten State Hospital. The report indicated that there was no noticeable impairment of petitioner's intelligence or thinking capacity at the time of his examination. It further reflected that at the time of his examination there were no signs of psychosis, nor had he shown any sign of psychosis after his incarceration. The Board of Examiners found petitioner to be fully competent to stand trial. The members of the Board also reported that it was their feeling that:

"Taking into consideration that Angel L. Cruz has not shown any sign of psychosis since his admission to this penitentiary on October 9, 1964, it is reasonable to presume that at the time he entered his guilty plea on September 15, 1964, he was not psychotic and was able to understand the nature of the proceedings against him. It is also our best opinion that Cruz has been without psychosis at all subsequent times."

In addition to the above medical reports of the Board, there is a letter in the record from the United States Public Health Service directed to Merchant Marine Investigating Unit dated May 4, 1964, in which it is stated that Angel L. Cruz was psychiatrically examined by the Public Health Service on May 1st, 1964, and was found fit for sea duty. In this letter, which was signed by the Service's Chief of Psychiatry, it is specifically stated that the examination was conducted with knowledge of the complete clinical summary and the details of Cruz's psychiatric hospitalization at Manhatten State Hospital.

In view of all the medical testimony in the record; in view of the fact that petitioner was examined by the Board of Psychiatric Examiners of the

Bureau of Prisons promptly after he filed his petition with this court, and that he was found to be mentally competent at all times subsequent to his imprisonment, it is my opinion that it is not necessary nor worthwhile under the existing circumstances to have petitioner at this late date evaluated psychiatrically by a private psychiatrist at this time, since we are only concerned in this proceeding with his mental condition at the time of his arraignment. I therefore deny petitioner's request for such private evaluation and will proceed to consider petitioner's motion based upon the record before the court.

█ Let us first consider petitioner's ground that he did not intelligently and knowingly waive the assistance of legal counsel at the time of his arraignment and trial on September 15, 1964. Having fully observed petitioner's demeanor and attitude at the time he appeared before me for trial, and considering the court's questions and petitioner's response thereto, I must conclude that petitioner was made fully aware and did completely understand all of the proceedings in the matter; that he understood the charges against him and all of his constitutional rights, including the right of assistance to counsel. The court also explained to defendant several different times during arraignment the possible range of punishment to which his plea of guilty subjected him. At one point in the proceedings plaintiff stated, upon being advised that he could possibly be given ten years in prison, "I don't think ten years in prison is anything to play with".[5] At another stage in the proceedings, the United States Attorney moved to correct a typographical error in the Information, whereupon the court inquired of the defendant if he objected to the amendment, so as to show that the correct amount of narcotics alleged to be in possession of defendant was 11.5 grams rather than 150 grams, to which question the defendant replied "[N]o, your Honor, it is in my favor".[6] When defendant was asked if he desired to make any statement before imposition of sentence, he replied [page 16 of Transcript]:

"The only thing I can say for myself —no doubt you have my record there, and you can tell by the record that I haven't got quite a nice life. I am just beginning to get myself started in society. If they take away my papers it will definitely break me, and I will, like they say, have to start all over again. I just wonder if there is something that you will be able to do so I won't lose my seaman's papers. I understand that even if I get a conviction I still have a chance of applying for Coast Guard work, if I don't get a certain amount of time, or something like that. I wish you would consider that. I would like not to lose my seaman's papers. Recently I have been doing pretty good and staying away from trouble. I think I should get a chance to prove myself a little farther on in life and see just what I will make up for myself."

As stated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, "[t]he purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights * * * *."

█ Considering the record before the court in the light of the principles enunciated by the United States Supreme Court in Johnson v. Zerbst, supra, and by the 4th Circuit Court of Appeals in Aiken v. United States, 4 Cir., 296 F.2d 604, at the time of his plea petitioner was fully advised of all his constitutional rights, was made aware of the maximum punishment, was queried as to any coercion or pressure brought to bear upon him by any person, and was fully advised as to his right to counsel to represent him in the matter. From the record and from my personal observation and evaluation of the petitioner at time of his arraignment and plea, I am compelled to find that he was in full comprehension

5. Transcript of arraignment, page 4.

6. Transcript of arraignment, page 10.

of all of the proceedings against him, that he had at that time a rational as well as a factual understanding of the proceedings against him, and that he did knowingly and intelligently waive his right to counsel.

 Petitioner's counsel, nevertheless, insists that petitioner was not advised and was not aware at the time of his arraignment of the possible defense of insanity at the time of the commission of the crime; and that therefore it cannot be said that he knowingly and intelligently waived his right to counsel, citing Moore v. Michigan, 355 U.S. 155, 78 S. Ct. 191, 2 L.Ed.2d 167 [1957]. In Moore petitioner pleaded guilty to murder and was sentenced to life imprisonment. He subsequently filed motion claiming his sentence and conviction were invalid because he did not have the assistance of counsel at the time of his plea and sentence. In that case, because of the nature of the proceedings [murder] against petitioner, and because of the fact that petitioner had possible defenses to said charge, one being the defense of insanity at the time of the commission of the crime, the Court determined that petitioner had a right to have counsel appointed to assist him in his defense. The Court recognized however that in such a situation a defendant may nevertheless effectively waive his right to counsel, if understandingly and intelligently done; even though under the facts in the Moore case the Court found that petitioner had not made a valid waiver.

I do not feel bound by the holding in Moore to grant petitioner's prayer for release under the circumstances of this case inasmuch as petitioner in my judgment did knowingly and intelligently waive his right to assistance of counsel in open court while under no compulsion or threats whatever to do so, while he was fully advised and aware of his constitutional rights.

As to the second ground for relief asserted by petitioner that he was mentally incompetent at the time of his arraignment and trial, I find that the medical and other evidence in the record, as well as my own observations and evaluation of petitioner demand a determination at my hands that plaintiff was fully competent at the time of his plea of guilty, that he had a rational, as well as factual, understanding of all the proceedings against him. Accordingly, it is

Ordered that the petitioner's motion to set aside judgment and conviction be, and it hereby is, denied.